IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CR-115-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| DAVID RICKY GODWIN, | ) | |
| DAVID RICKY GODWIN, JR., | ) | |
| and RGB, INC., | ) | |
| | ) | |
| Defendants. | ) | |

On August 11, 2015, a grand jury in the Eastern District of North Carolina indicted David

Ricky Godwin ("Godwin"), David Ricky Godwin, Jr. ("Godwin, Jr."), and RGB, Inc. ("RGB")

(collectively, "defendants") for conspiracy and violating federal gambling laws ("counts one through

twenty-one") [D.E. 43] 1–10. The grand jury also indicted Godwin for possession of firearm by a

convicted felon in violation of 18 U.S.C. §§ 922(g) and 924 ("count twenty-two"). Id. 10.

On September 30, 2015, defendants moved to dismiss counts 3 and 4 for improper venue

[D.E. 53], counts 3 through 21 for violation of the Fifth Amendment privilege against self-

incrimination [D.E. 54], and the entire indictment due to "grand jury violations" [D.E. 55]. On

November 16, 2015, the government moved to dismiss counts 3 through 21 against Godwin and

Godwin, Jr. [D.E. 64] and responded to defendants' motions [D.E. 63, 65, 66]. On February 3, 2016,

the court granted the government's motion to dismiss counts 3 through 21 against Godwin and

Godwin, Jr. and dismissed those counts as to Godwin and Godwin, Jr. [D.E. 84]. As explained

below, the court denies defendants' motions to dismiss.[1]

---

[1] Dismissing counts 3 through 21 against defendants Godwin and Godwin, Jr. mooted their
motion to dismiss those counts for alleged violation of their Fifth Amendment privilege against self-
incrimination. To the extent defendants' motion asks the court to dismiss counts 3 through 21 as to
defendant RGB, the motion is denied. The Fifth Amendment privilege against self-incrimination

I.

As for defendants' motion to dismiss counts 3 and 4 for improper venue [D.E. 53], the court already dismissed counts 3 and 4 against Godwin and Godwin, Jr. See [D.E. 84]. Thus, the court denies the motion as moot as to Godwin and Godwin, Jr. As for RGB, counts 3 and 4 charge that defendants, aiding and abetting one another and others, "knowingly engaged in the business of repairing, reconditioning, buying, selling, leasing, using, and making available for use by others" gambling devices "without registering with the Attorney General," in violation of 15 U.S.C. §§ 1173(a), 1176 and 18 U.S.C. § 2. See [D.E. 43] 7–8. Those engaged in certain gambling activities must "register[] with the Attorney General." 15 U.S.C. § 1173(a)(3). Because the Attorney General is located in the District of Columbia, RGB argues that the "registration can only be satisfied by filing the appropriate paperwork in Washington, D.C." and, therefore, venue for counts three and four is appropriate only in the United States District Court for the District of Columbia. [D.E. 53] 2.

Unless a statute or the Federal Rules of Criminal Procedure permit otherwise, "the government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18; see U.S. Const., art. III, § 2, cl. 3; U.S. Const. amend. VI. Absent an express venue provision in a criminal statute, proper venue includes any district where a defendant engages in conduct essential to the criminal offense. See United States v. Oceanpro Indus., Ltd., 674 F.3d 323, 328 (4th Cir. 2012); United States v. Bowens, 224 F.3d 302, 308–09, 312–14 (4th Cir. 2000). In analyzing venue, courts "must initially identify the conduct constituting the offense (the nature of the crime)

---

does not apply to corporations. See, e.g., Braswell v. United States, 487 U.S. 99, 105 (1988); Bellis v. United States, 417 U.S. 85, 89–90 (1974); United States v. Stone, 976 F.2d 909, 912 (4th Cir. 1992).

2

and then discern the location of the commission of the criminal acts." United States v. Rodriguez-Moreno, 526 U.S. 275, 279 (1999); see Oceanpro Indus., Ltd., 674 F.3d at 328; Bowens, 224 F.3d at 308–09. Venue is improper if the defendants "demonstrate that the allegations" in the indictment "even if true, would not establish venue." United States v. Engle, 676 F.3d 405, 415 (4th Cir. 2012). More than one venue may be proper. See, e.g., Rodriguez-Moreno, 526 U.S. at 281–82; Engle, 676 F.3d at 415; Bowens, 224 F.3d at 308–09, 314; 18 U.S.C. § 3237(a) (a crime committed in more than one district may be prosecuted in any district in which it began, continued, or was completed).

15 U.S.C. § 1173(a)(3) states:

It shall be unlawful for any person during any calendar year to engage in the business of repairing, reconditioning, buying, selling, leasing, using, or making available for use by others any gambling device, if in such business he buys or receives any such device knowing that it has been transported in interstate or foreign commerce after the effective date of the Gambling Devices Act of 1962, unless, after November 30, of the preceding calendar year and before the date on which he buys or receives such device, such person has registered with the Attorney General under this subsection.

The crime includes the following three elements: (1) engaging in certain business involving any "gambling device"; (2) "buy[ing] or receiv[ing] any such device knowing that it has been transported in interstate or foreign commerce after the effective date of the Gambling Devices Act of 1962"; and (3) failing to register with the Attorney General. Id. The indictment alleges that the crime occurred in the Eastern District of North Carolina. Specifically, the indictment alleges that RGB operated a business in Selma, North Carolina, and Garner, North Carolina, that this business "provided gambling devices . . . to businesses in eastern North Carolina," that during the course of said business RGB bought and received gambling devices "knowing that [they] had been transported in interstate commerce after the effective date of the Gambling Devices Act," and that RGB did so without having registered with the Attorney General. See [D.E. 43] 1–2, 7–8.

3

RGB argues the alleged failure to register is the only conduct essential to the crime, and that for venue purposes, the relevant conduct occurred only in Washington, D.C. See [D.E. 53]. In support, defendants cite cases that stand for the proposition that, when the failure to perform a certain action is a crime, the place where the omitted performance should have occurred constitutes the exclusive venue. Id.; see Johnston v. United States, 351 U.S. 215, 219–23 (1956); Rumely v. McCarthy, 250 U.S. 283, 289 (1919); United States v. Garman, 748 F.2d 218, 219–21 (4th Cir. 1984). The cited cases, however, do not stand for the proposition that the place where the omitted performance should have occurred constitutes the exclusive venue. Rather, multiple venues may be proper depending on the elements of the offense. See, e.g., Rodriguez-Moreno, 526 U.S. at 281–82; Engle, 676 F.3d at 415; Bowens, 224 F.3d at 309; 18 U.S.C. § 3237(a). Failure to register is one of only three essential elements under 15 U.S.C. § 1173(a)(3), and a violation of section 1173(a)(3) continues after the failure to register. Therefore, even though venue would be proper in the District of Columbia, the indictment alleges that conduct essential to the offenses in counts three and four occurred in the Eastern District of North Carolina. Thus, venue is proper in this district, and the court denies RGB's motion to dismiss for improper venue. See, e.g., Rodriguez-Moreno, 526 U.S. at 281–82; Engle, 676 F.3d at 415; Bowens, 224 F.3d at 309; 18 U.S.C. § 3237(a).

II.

As for defendants' motion to dismiss the indictment based on alleged grand-jury violations [D.E. 55], "the law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." United States v. R. Enters., Inc., 498 U.S. 292, 300 (1991). Even if a nonconstitutional violation occurs in the grand jury, "dismissal of the indictment is appropriate only if it is established that the violation substantially influenced the grand jury's

4

decision to indict or if there is grave doubt that the decision to indict was free of such violations." Bank of Nova Scotia v. United States, 487 U.S. 250, 256 (1988) (quotation omitted).

Defendants argue that Special Agent Clay Joyner ("Joyner") testified to impermissible legal conclusions in the grand jury. [D.E. 55] 4–10. According to defendants, Joyner testified that certain gambling devices were illegal, and the illegality of a gambling device is an element of the crimes charged in counts one and two. Id. 1–6; 18 U.S.C. § 1955. Thus, according to defendants, Joyner's testimony negated the grand jury's ability to decide the devices' illegality.

In context, Joyner's use of the word "illegal" did not deprive the grand jury of its independent judgment. Joyner testified that his investigation began with "a criminal investigation into numerous locations . . . that were in possession of illegal slot machines or video poker machines or video gaming machines." [D.E. 55-1] 5. Joyner testified in detail as to the specific functioning of different types of machines. Id. 7–8, 16. During the course of Joyner's investigation, he and other investigators "would play some of the games, see exactly what they were, and determined in [their] opinion that they–they were illegal under North Carolina law." [D.E. 55-2] 6. Joyner described to the grand jury one type of machine that defendants sold to undercover agents as "an illegal slot machine based on that you are putting actual U.S. coins in it and you are receiving U.S. coins out, and it's a game of chance." Id. 14. He described the equipment that investigators seized pursuant to search warrants as "in excess of three hundred illegal video games and/or quarter pushers." Id. 28. He described other machines that the defendants owned as "not considered to be illegal under North Carolina Statute or federal law." Id. 29. He also testified that certain devices, including "Pot-O-Gold," "keno," and "the lotto games," were specifically prohibited under North Carolina law. Id. 39; see N.C. Gen. Stat. § 14.306.4(a)(3), (b). On at least three occasions, Joyner described in detail the characteristics of certain devices that rendered them illegal. [D.E. 55-1] 7–8, 16–17; [D.E. 55-2]

13. Joyner couched his determination of illegality as an "opinion." [D.E. 55-2] 6. On other occasions, Joyner used the word illegal merely to provide context and to explain the investigation. See [D.E. 55-1] 5; [D.E. 55-2] 29. At the end of Joyner's testimony, one grand juror asked Joyner to describe in simple terms what made certain machines illegal. The Assistant United States Attorney ("AUSA") responded that the illegality of the machines was "a legal question" that Joyner could not answer and that grand jurors would have an opportunity to hear the statute's contents and decide the question for themselves. [D.E. 55-2] 43–44.

Joyner's references to the illegality of certain machines do not, individually or collectively, overcome the strong presumption of regularity attached to the grand-jury process. Other than privileges, the Federal Rules of Evidence do not apply in grand-jury proceedings. See Fed. R. Evid. 1101(d)(2). Moreover, even if the Federal Rules of Evidence did apply, they generally do not categorically prohibit a witness from testifying as to "an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704(a). Here, defendants fail to cite a specific rule of evidence, rule of criminal procedure, or constitutional provision that Joyner's testimony violated. Absent proof of such a violation, defendants' argument is doomed to fail. See, e.g., United States v. Williams, 504 U.S. 36, 48–55 (1992); United States v. Calandra, 414 U.S. 338, 342–52 (1974); Costello v. United States, 350 U.S. 359, 363–64 (1956). In any event, Joyner's testimony did not suggest that the grand jury had to find probable cause as to a particular element or negate the grand jury's ability to decide independently. Thus, the court rejects defendants' argument. See, e.g., United States v. Hillman, 642 F.3d 929, 933–36 (10th Cir. 2011).

Alternatively, defendants have failed to prove prejudice. See Bank of Nova Scotia, 487 U.S. at 256. Although phrased as a denial of the "right to have the grand jury make the charge on its own judgment," defendants simply grouse that the grand jury heard allegedly improper testimony from

Joyner. See [D.E. 55] 4–10. A court, however, may dismiss an indictment only if the moving party demonstrates that the nonconstitutional violation "substantially influenced the grand jury's decision to indict or if there is grave doubt that the decision to indict was free of such violations." Bank of Nova Scotia, 487 U.S. at 256 (quotation omitted). Here, the AUSA clarified that the illegality of devices was not a question that Joyner could answer and that only the grand jury could make that determination. [D.E. 55-2] 43–44. In light of the AUSA's clarification and the substantial evidence concerning the machines, defendants have not demonstrated that Joyner's references to illegality substantially influenced the grand jury's decision to indict. Thus, the court denies defendants' motion to dismiss the indictment based on Joyner's testimony.

Next, defendants argue that the government improperly presented evidence of Godwin and Godwin, Jr.'s prior felony convictions. Grand juries may consider information from a broad range of sources, unbound by the Federal Rules of Evidence. See, e.g., R. Enters., Inc., 498 U.S. at 298; Calandra, 414 U.S. at 343–53; Costello, 350 U.S. at 363–64; cf. Fed. R. Evid. 404(b), 1101(d)(2). Courts may not dismiss a facially valid indictment merely because "there was inadequate or incompetent evidence before the grand jury." Costello, 350 U.S. at 363. Here, defendants' prior felony convictions fell within the broad scope of permissible information the grand jury could consider. Thus, the court denies defendants' motion to dismiss the indictment based on the presentation of evidence of Godwin and Godwin, Jr.'s prior felony convictions.

Finally, defendants argue that the court should dismiss the indictment because defendants "assume that the government instructed the jury using the Model Grand Jury Charge," which the defendants argue is unconstitutional. [D.E. 55] 18. As defendants acknowledge, their argument is mere speculation. See id. Mere speculation, however, cannot overcome the presumption of regularity in grand-jury proceedings. Rather, defendants must prove a statutory or constitutional

7

violation and prejudice. See R. Enters., Inc., 498 U.S. at 298. Although the court need not decide whether the Model Grand Jury Charge would have been constitutional if used, two other circuits have upheld the Model Grand Jury Charge against similar challenges. See, e.g., United States v. Knight, 490 F.3d 1268, 1271–72 (11th Cir. 2007); United States v. Navarro-Vargas, 408 F.3d 1184, 1188–1208 (9th Cir. 2005) (en banc). Thus, the court denies defendants' motion to dismiss the indictment based on the potential use of the Model Grand Jury Charge.

III.

In sum, the court DENIES defendants' motion to dismiss counts 3 and 4 for improper venue [D.E. 53], DENIES defendants' motion to dismiss counts 3 through 21 for violation of the Fifth Amendment privilege against self-incrimination [D.E. 54], and DENIES defendants' motion to dismiss the indictment for "grand jury violations" [D.E. 55]. Godwin, Jr., RGB, and the government shall confer and submit proposed trial dates. The proposed trial dates are due by November 4, 2016.

SO ORDERED. This **2.5** day of October 2016.

_Dever_
JAMES C. DEVER III
Chief United States District Judge

8